**Cyril BOWMAN, Plaintiff,**

v.

**BANK OF DELAWARE, Defendant.**

**Civ. A. No. 87–44–CMW.**

United States District Court,
D. Delaware.

Aug. 12, 1987.

Sheryl Rush-Milstead, Wilmington, Del., for plaintiff.

Sheldon N. Sandler, of Young, Conaway, Stargatt & Taylor, Wilmington, Del. and Lydia C. Blancato, of Bank of Delaware, Wilmington, Del., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiff Cyril Bowman filed this action against his former employer, Bank of Delaware, alleging discrimination because of his national origin. Count I alleges that defendant violated Title VII of the Civil Rights Act of 1964 by discriminating against plaintiff in the conditions of employment. 42 U.S.C. §§ 2000e *et seq.* (1982) ("Title VII"). Count II asserts a Title VII violation based on defendant's discharge practices. Count III charges that the defendant violated plaintiff's right to equal protection of the law under the Fourteenth Amendment to the United States Constitution. Last, Count IV alleges that defendants conspired to interfere with plaintiff's civil rights by denying him due process and depriving him of equal protection.[1] The statutory bases for Counts III and IV are 42 U.S.C. §§ 1985(3) and 1986 (1982). Defendant has moved to

---

**1.** Throughout the complaint, plaintiff refers to "defendants" when there is in fact only one defendant, the Bank of Delaware. The Court construes the use of "defendants" to mean defendant's employees. The significance of this is in the arguments raised concerning whether a corporation can conspire with itself when more than one employee is involved. As the discussion, *infra*, illustrates, the Court does not need to reach this issue.

dismiss these two counts pursuant to Fed. R.Civ.P. 12(b)(6).

## FACTS

On this Motion to Dismiss, all facts alleged in the complaint will be assumed to be true. Plaintiff was an employee of defendant for approximately 12 years, during which time plaintiff consistently received positive employment performance evaluations. Plaintiff claims that beginning in late 1985, he was discriminated against because he was passed over for promotions, was prohibited from attending training seminars open to all other employees, and was ordered to perform menial janitorial tasks. After plaintiff expressed displeasure about discriminatory remarks concerning his English language skills as well as his ancestry, and inquired about the drastic changes in his working conditions, the Bank discharged the plaintiff on February 13, 1986. He was on sick leave at the time. He subsequently filed a charge of discrimination with the Anti-Discrimination Section of the State of Delaware's Department of Labor. The Anti-Discrimination Section then sent the charge to the Equal Employment Opportunity Commission. After the E.E.O.C. issued a Right to Sue Letter, plaintiff then filed suit against defendant in this Court, alleging that his termination was based on his national origin.

## DISCUSSION

The sole issue before the Court is whether the facts as alleged in the complaint create a 42 U.S.C. § 1985(3) cause of action.[2] The relevant portion of § 1985(3) creates a right of action when "[t]wo or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...." The scope of this statutory language lies at the core of this case.

In *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Supreme Court held that "§ 1985(3) may not be invoked to redress violations of Title VII." *Id.* at 378, 99 S.Ct. at 2352. The Supreme Court ruled that § 1985(3) is a remedial, not a substantive, statute. *Id.* at 376, 99 S.Ct. at 2351. In order for a plaintiff to sue under § 1985(3), the plaintiff must be able to invoke the protection of some otherwise defined federal right. The Court then held that Title VII was not one of the otherwise defined federal rights for which the § 1985(3) remedy could be invoked. Not surprisingly, defendant primarily relies upon *Novotny* in bringing this Motion to Dismiss, because the same facts are used as the foundation for both the Title VII claims and the § 1985(3) claims. The plaintiff presented no separate factual allegations for his § 1985(3) claims.

Plaintiff attempts to distinguish his case from *Novotny* on the grounds that the facts of his case are sufficient to create a § 1985(3) action based upon a federally secured right other than Title VII. Count III of the plaintiff's complaint alleges a violation of his Fourteenth Amendment rights. In Count IV, the plaintiff does not cite a particular constitutional or statutory provision but alleges that the defendant conspired to deprive him of his rights to equal protection and due process. Plaintiff's claims must be dismissed because neither of the above constitutional rights is assertable against purely private action.[3]

In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that § 1985(3) created a cause of action against certain private conspiracies. The *Griffin* court found a § 1985(3) action to be based in an invidious, racially discriminatory conspiracy to violate Thirteenth Amendment rights and the fundamental right to interstate travel, which are constitutional rights secured against

---

**2.** Any potential 42 U.S.C. § 1986 claim is derivative of the § 1985(3) claim. *Trerice v. Pedersen,* 769 F.2d 1398, 1403 (9th Cir.1985). If the complaint does not state a § 1985(3) cause of action, then any § 1986 claim must fail as well.

**3.** In reaching this conclusion, the Court is assuming—but not holding—that a corporation can conspire with itself, and that this conspiracy invidiously discriminated against plaintiff based upon his national origin. *See Novotny,* 442 U.S. at 372 n. 11, 99 S.Ct. at 2349 n. 11.

private as well as state action. *Id.* at 102–105, 91 S.Ct. at 1798–1800. Thus, a showing of state involvement was not required in *Griffin.* Given the existence of these rights, the Court did not decide what other rights could be actionable against private citizens under § 1985(3).

The concurrences in *Novotny* and the majority opinion in *United Brotherhood of Carpenters & Joiners of America, Local 610 AFL–CIO v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) more clearly limit the scope of the § 1985(3) remedy's use against private citizens. Justice Powell distinguished the employment right claimed in *Novotny* from the rights claimed in *Griffin* by stating, "[T]his Court has never held that the right to any particular private employment is a 'right of national citizenship,' or derives from any other right created by the Constitution." 442 U.S. at 380, 99 S.Ct. at 2353. Justice Stevens noted that the rights in *Griffin* were rights protectable against private action while rights based in the Fourteenth Amendment were not:

> Other privileges and immunities of citizenship such as the right to due process of law and the right to the equal protection of the laws are protected by the Constitution only against state action ... Or if private persons take conspiratorial action that prevents or hinders the constituted authorities of any State from giving or securing equal treatment, the private persons would cause those authorities to violate the Fourteenth Amendment; the private persons would then have violated § 1985(3). *Id.* at 384, 99 S.Ct. at 2355 (citations and footnotes omitted).

In *Scott,* the Supreme Court held that there could not be a § 1985(3) claim based upon an alleged private violation of First Amendment rights because, in order to establish a First Amendment violation, state action was required. If the substantive right underlying the § 1985(3) claim is one in which state action or involvement is required, then such state action must be alleged.

Both plaintiff's § 1985(3) claims derive from violations of equal protection and due process; yet nowhere is there any allegation of state action or of a conspiracy to interfere with state actions. Although after *Griffin,* it is settled that § 1985(3) creates a cause of action against private conspiracies, *Novotny* makes clear that the substantive right violated by a private conspiracy must be derived from somewhere other than § 1985(3).[4] The Court finds that plaintiff's case is indistinguishable from *Novotny,* and the plaintiff cannot maintain a § 1985(3) cause of action based upon the same set of facts as a Title VII action when the case does not involve any state action.[5] Because the complaint's current allegations in Counts III and IV are solely alleged as § 1985(3) causes of action, these two counts will be dismissed.

An Order will enter in conformity with this Opinion.

---

**4.** That *Novotny* involved sex discrimination and this case involves discrimination based on national origin does not alter the result because in neither case was a substantive right actionable under § 1985(3) violated.

**5.** None of the cases plaintiff cited justify allowing a claim here without state action. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) discussed the relationship between 42 U.S.C. § 1981 and Title VII. *Frank Briscoe, Inc. v. National Labor Relations Board,* 637 F.2d 946 (3d Cir.1981) concerns bringing an action pursuant to Title VII and the National Labor Relations Act. In both these cases, unlike the instant case, the courts found that all the prerequisites for both causes of action were satisfied. Moreover, plaintiff's citation to *Munson v. Friske,* 754 F.2d 683 (7th Cir.1985) for the proposition that no state action is required ignores the fact that *Munson* involved state action. Here, the issue concerns whether a § 1985(3) cause of action exists. Rulings based on the requirements of other causes of action do not affect the determination of the interrelationship between § 1985(3) and Title VII.